## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO. 20-65** |
| **ASHTON J. RYAN JR.** <br> **WILLIAM J. BURNELL** <br> **ROBERT CALLOWAY** <br> **FRANK J. ADOLPH** <br> **FRED V. BEEBE** | **SECTION "L"(4)** |

## ORDER

Before the Court is Defendant Fred Beebe's motion for the entry of a standing *Brady* order pursuant to the Due Process Protections Act. R. Doc. 96.[1] The government opposes the motion. R. Doc. 101. Having considered the applicable law and the parties' arguments, the Court now rules as follows.

### I.    BACKGROUND

This case arises from fraudulent bank activity at First NBC Bank ("Bank"), the failure of which cost the FDIC's deposit insurance fund approximately $996.9 million. R. Doc. 65 at 2. From its founding in 2006 until approximately April 2017, the Bank's assets grew to an estimated $5 billion. *Id.* In large part, this growth was the result of the Bank increasing its loan portfolio. *Id.* On January 29, 2021, a Superseding Indictment was entered alleging, among other things, that defendants participated in a scheme to defraud the Bank and enrich themselves by hiding the true financial condition of certain borrowers and their troubled loans to prevent the borrowers from declaring a loss. *Id.* at 7. As part of this scheme, defendants are alleged to have made false

---

[1] Defendants Ryan and Calloway have also adopted the motion. R. Docs. 109, 124.

statements including material omissions related to loan documents and tax credit investment funds, as well as entered false entries in the books, reports, and statements of the Bank. *Id.* at 24-29, 30-34. Defendants were charged with one count of conspiracy to commit bank fraud (Count 1), thirty-six counts of bank fraud (Counts 2-37), and twelve counts of false entries in bank records (Counts 38-49).

## II.     PRESENT MOTION

On February 8, 2021, Defendant Beebe filed a motion requesting the entry of a standing *Brady* order pursuant to the Due Process Protections Act ("DPPA")[2] and proposing a model order for use in the Eastern District. R. Doc. 96. In response, the government argues that the motion is moot in light of the *Brady* order issued by the magistrate judge at Defendant's initial appearance on February 17, 2021. R. Doc. 101. The government also objected to the proposed order, stating that its contents "go beyond what is required under the Act." *Id.* at 2 n.1.

In reply, Mr. Beebe argues that "a magistrate judge is not the appropriate judicial officer" to enter a *Brady* order because the Act directs the judge to enter the required order. R. Doc. 106. Mr. Beebe insists that the word judge must refer to the presiding Article III judge because the Act does not employ the phrase magistrate judge. *Id.* at 2. Mr. Beebe points out that elsewhere in the rules, the modifier "magistrate" is used when referring to a magistrate judge. Further, Mr. Beebe argues "even if a magistrate judge were the appropriate judicial officer to enter the order, the order currently being used in this District is woefully inadequate." *Id.* at 3.

## III.     LAW & ANALYSIS

---

[2] The DPPA, enacted in October 2020, amends Federal Rule of Criminal Procedure 5 to require federal district courts to issue, "on the first scheduled court date . . . an oral and written order . . . that confirms the disclosure obligation of the prosecutor . . . and the possible consequences of violating such order under applicable law." P.L. No. 116-182. Such orders are commonly referred to as "*Brady* orders."

The Due Process Protections Act of 2020 directly amends Rule 5(f) of the Federal Rules of Criminal Procedure and provides that:

> In all criminal proceedings, on the first scheduled court date when both prosecutor and defense counsel are present, the judge shall issue an oral and written order to prosecution and defense counsel that confirms the disclosure obligation of the prosecutor under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, and the possible consequences of violating such order under applicable law. Each judicial council in which a district court is located shall promulgate a model order for [this] purpose…that the court may use as it determines is appropriate.

The DPPA, passed by unanimous consent in both the U.S. Senate and House of Representatives, does not purport to alter the government's substantive obligations under governing law. It does, however, highlight the importance of compliance with *Brady* obligations at the beginning of every criminal case.

On February 17, 2021, at Mr. Beebe's initial appearance, the magistrate judge issued an oral and written order ("the *Brady* Order"), advising the government of its obligation to produce all exculpatory evidence to the defendant. R. Doc. 117. The *Brady* Order provides, in relevant part, that the possible consequences of failing to produce such evidence "in a timely manner," may include but are not limited to, "exclusion of evidence, adverse jury instructions, dismissal of charges, contempt proceedings, and/or sanctions by the Court." *Id.* Thus, Mr. Beebe's request to enter a standing *Brady* order pursuant to the DPPA is moot. Defendant, however, also objected to the procedural form and substance of the *Brady* Order as inadequate R. Doc. 118. The Court will now address these objections.

First, Defendant contends that the magistrate judge is not the proper official to enter a *Brady* order because Rule 5(f) of the Federals Rules of Criminal Procedure directs "the judge" to do so. Statutory analysis begins with the text, and a federal magistrate judge is undoubtedly a judge. More importantly, magistrate judges' power to issue *Brady* orders comports with the overall

structure of Rule 5, which is entitled "Initial Appearance." *See NLRB v. SW Gen., Inc.*, 137 S. Ct. 929, 938-39 (2017) (considering disputed terms from statutory subsection individually and then considering them as a who); *see also INS v. National Center for Immigrants' Rights*, 502 U.S. 183, 189-90 (1991) (explaining that the title of a statute or section "can aid in resolving an ambiguity in the legislation's text.") Rule 5 deals with the procedure to be followed during an initial appearance before a magistrate judge. A defendant must be brought before a magistrate judge "without unnecessary delay" for the initial appearance upon arrest. Fed. R. Crim. P. 5(a)(1) Within this context, subsection 5(f)(1) specifies that the *Brady* order shall be issued on "the first scheduled court date when both prosecutor and defense counsel are present." Fed. R. Crim. P 5(f)(1). At the conference, Rule 5(f) requires an oral order be issued, in addition to a written order. Fed. R. Crim. P. 5(f). Thus, it would be illogical to presume Congress intended that the federal district judge, who is not typically present at the initial appearance, must preside solely for the purpose of issuing an oral *Brady* order. In sum, the Court is not persuaded by the argument that the term "judge" without the modifier "magistrate" must only refer to an Article III judge, when magistrate judges undoubtedly play a significant role in the pretrial criminal process.[3]

Defendant next argues that the Order's content is inadequate because it lacks an explanation of the relevant precedent and concrete disclosure deadlines. Rule 5(f) provides that a judge must confirm the government's obligation, under well-established law, to produce exculpatory evidence and the consequences for violating the order. Fed. R. Crim. P. 5(f). Notably, the rule does *not* require a court to set a deadline by which the government must disclose *Brady*

---

[3] 20 U.S.C. § 636(a)(1) provides that "each United States magistrate judge…shall have…all powers and duties conferred or imposed upon United States commissioners by law or by the Rules of Criminal Procedure for the United States District Courts." " Notwithstanding any provision of law to the contrary, a judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court," except those listed matters. § 636(b)(1). In addition, magistrate judges have "the power to exercise contempt authority." § 636(a)(1).

material, nor does it dictate what specific consequences should result upon a failure to comply with these obligations. In fact, rather than require each federal court to employ a uniform script to advise the parties of the disclosure obligations under *Brady*, amended Rule 5(f) gives discretion to each court to craft an order effectuating the DPPA in a given case. [4]

Here, the relevant Order requires the government to disclose *Brady* material before trial "within a timely manner" and provides a wide-ranging list of potential sanctions for violating the order. While in Defendant's view, this vagueness amounts to "cynicism" towards Defendant's rights, in the Court's view, it provides the necessary flexibility to tackle the moving target that is the government's obligations under *Brady* and its progeny. In *Brady v. Maryland*, the Supreme Court held that withholding exculpatory evidence violates due process "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963). Thus, prosecutors have an affirmative duty to timely disclose exculpatory information when such information is "material" to guilt or punishment. *See also Cone v. United States*, 129 S. Ct. 1769, 1783 (2009) (citing *United States v. Bagley*, 473 U.S. 667, 682 (1985)) (defined evidence as "material" when "there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different.") Since 1963, courts have clarified and analyzed issues such as what is favorable information, where the prosecution must look for it, how materiality must be assessed, when it must be disclosed, and in what format. It is undisputed that the government remains bound by this precedent, and that the Court has the power to sanction the government for failing to comply. The instant *Brady* Order reminds prosecutors of their obligations under governing law and allows the Court to respond

---

[4] Subsection (f)(2) of amended Rule 5 also directs each judicial council in which a district court is located to "promulgate a model order for the purpose of paragraph (1) that the court may use as it determines is appropriate." The Judicial Council for the Fifth Circuit has not yet issued such an order, and the Court would welcome the Council's input.

appropriately to violations, without unnecessarily limiting the scope of what must be disclosed or potential sanctions at the outset of the trial.

Thus, the Court concludes that the *Brady* Order issued in this case satisfies the requirements of the Due Process Protections Act.

## VI.  CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Defendant's motion is hereby **DENIED**.


New Orleans, Louisiana, on this 2nd day of March, 2021.

UNITED STATES DISTRICT JUDGE