UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 20-65 |
| FRED BEEBE | SECTION "L"(4) |

### ORDER AND REASONS

Before the Court is Fred Beebe's Motion for Fees and Litigation Expenses Pursuant to the Hyde Amendment. R. Doc. 965. Government has responded in opposition. R. Doc. 1001. Having considered the briefing and the applicable law, the Court rules as follows.

I.    BACKGROUND

This case arises from alleged fraudulent bank activity at First NBC Bank ("FNBC" or "the Bank"), the failure of which cost the Federal Deposit Insurance Corporation's deposit insurance fund approximately $996.9 million. On August 5, 2021, a 49-count Second Superseding Indictment ("the Indictment") was entered charging Defendant Beebe and his co-Defendants with conspiracy to commit bank fraud, bank fraud, and false entries in bank records. R. Doc. 318. In relevant part, the Second Superseding Indictment alleges that Bank Officers and borrowers participated in a scheme to defraud the Bank and enrich themselves by lying on loan documents about borrowers' creditworthiness, the purposes of the loans, and the method of repayment. *Id.* at 7. Trial began in this case on January 9, 2023, and on February 9, 2023 the jury found Beebe's co-defendant Ashton Ryan guilty of all charges, but found Mr. Beebe not guilty of all charges.

II.    PRESENT MOTION

Beebe now moves this Court for an award of fees and litigation expenses pursuant to the Hyde Amendment of the Departments of Commerce, Justice, and State, The Judiciary, and Related Agencies Appropriations Act of 1998, Pub. L. No. 105–119, § 617, 111 Stat. 2440, 2519 (1997) (found as statutory note at 18 U.S.C. § 3006A) ("the Hyde Amendment"). Beebe contends that (1) the initiation of this prosecution, (2) the pretrial conduct by the prosecutors, and (3) the trial conduct by the prosecutors, each and in toto, were vexatious, frivolous, and/or in bad faith, and support the award of fees and litigation costs. R. Doc. 965-1 at 1. In response, the Government asserts that Beebe's claims are meritless and frivolous and that Beebe cannot satisfy the demanding standard required for an award of fees under the Hyde Amendment. R. Doc. 1001 at 1–2.

### III.   APPLICABLE LAW

"In 1997, Congress enacted the 'Hyde Amendment.'" *United States v. Love*, No. EP-16- CR-693-DB-6, 2019 WL 5431789, at *2 (W.D. Tex. Oct. 23, 2019); *see also* Pub. L. No. 105– 119, § 617, 111 Stat. 2440 (1997). "It states:

> During fiscal year 1998 and in any fiscal year thereafter, the court, in any criminal case (other than a case in which the defendant is represented by assigned counsel paid for by the public) pending on or after the date of the enactment of this Act, may award to a prevailing party, other than the United States, a reasonable attorney's fee and other litigation expenses, where the court finds that the position of the United States was vexatious, frivolous, or in bad faith, unless the court finds that special circumstances make such an award unjust. Such awards shall be granted pursuant to the procedures and limitations (but not the burden of proof) provided for an award under section 2412 of title 28, United States Code.

*Love*, 2019 WL 5431789, at *2 (quoting Pub. L. No. 105–119, § 617, 111 Stat. 2440 (1997)). "The Hyde Amendment 'was enacted by Congress . . . to allow wrongfully prosecuted criminal defendants a means to sanction the Government for prosecutorial misconduct' and allows a district court to award a prevailing party attorney's fees only where it 'finds that the position of

the United States was vexatious, frivolous, or in bad faith.'" *Id.* (quoting Pub. L. No. 105–119, § 617, 111 Stat. 2440 (1997)). "'The criminal defendant bears the burden of proving this by a preponderance of the evidence, as well as establishing that he is otherwise qualified for the award under the law.'" *Id.* (quoting *United States v. Adkinson*, 247 F.3d 1289, 1291 (11th Cir. 2001)).

"A movant under the Hyde Amendment must prove more than just that the government's position was not substantially justified." *United States v. Truesdale*, 211 F.3d 898, 909. "Courts have determined that seven elements must be met for a defendant to receive relief under the Hyde Amendment." *Love*, 2019 WL 5431789, at *2. "They are: (1) the case was pending on or after the enactment of the Hyde Amendment; (2) the case was a criminal case; (3) the defendant was not represented by assigned counsel paid for by the public; (4) the defendant was the prevailing party; (5) the prosecution was vexatious, frivolous, or in bad faith; (6) the attorney's fees were reasonable; and (7) no special circumstances exist that would make an award unjust." *Id.* "These elements are separate and independent of each other, they do not need to be met in a particular order, and the failure of the defendant to satisfy any one of them is enough to deny relief." *Id.* (citing *United States v. Chapman*, 524 F.3d 1073, 1089-90 (9th Cir. 2008)).

Accordingly, the Court will consider prong five: was the prosecution of Fred Beebe vexatious, frivolous, or in bad faith?

"The ordinary meaning of vexatious is 'lacking justification and intended to harass' or 'without reasonable or probable cause or excuse.'" *Love*, 2019 WL 5431789, at *5 (brackets and citations omitted); *see also United States v. Fazzio*, No. 11-157, 2013 WL 3334956, at *1 (E.D. La. June 24, 2013). "[I]f the government had sufficient evidence to have probable cause to

believe that the defendant committed the crimes charged, the prosecution against him was not vexatious." *Love*, 2019 WL 5431789, at *5 (brackets omitted).

The circuits "have laid extensive groundwork for analyzing frivolousness under the Hyde Amendment." *United States v. Reyes-Romero*, 959 F.3d 80, 98 (3d Cir. 2020). "For the Government's position to be frivolous, the prosecution it pursues must be groundless, with little prospect of success." *Id.* (quotation marks and brackets omitted); see also *Fazzio*, 2013 WL 3334956, at *1. "Said differently, the position must be foreclosed by binding precedent or obviously wrong[.]" *Reyes-Romero*, 959 F.3d at 98 (quotation marks and ellipsis omitted). "In assessing frivolousness, therefore, [courts] view the prosecution through the lens of the elements of the criminal charge and the evidence required to satisfy those elements." *See id.* at 98-99. "Although our criminal justice system depends on prosecutors' discretion to decide which cases to pursue, their choice to pursue an objectively valid prosecution is immune from scrutiny by the federal courts." *Id.* at 100. "Put another way, our constitutional framework is such that we cannot read the Hyde Amendment to license judicial second-guessing of prosecutions that are objectively reasonable[.]" *Id.* (quotation marks omitted); *see also id.* at 108 ("[W]here reasonable minds may differ, and where the Government made objectively reasonable and defensible choices throughout the prosecution, there can be no Hyde Amendment liability."); *United States v. Shaygan*, 652 F.3d 1297, 1317 (11th Cir. 2011) ("If the prosecution is objectively reasonable . . . then a district court has no discretion to award a prevailing defendant attorney's fees and costs under the Hyde Amendment.").

The definition of bad faith also "benefit[s] from a well-developed line of precedent." *Reyes-Romero*, 959 F.3d at 101. "Bad faith requires more than bad judgment or negligence; it demands the conscious doing of a wrong because of dishonest purpose or moral obliquity." *Id.* (quotation

marks omitted); *see also Fazzio*, 2013 WL 3334956, at *1 (using similar definition). "[I]n assessing whether the position of the United States was in bad faith, we may not delve into the minds and motivations of individual prosecutors[.]" *Reyes-Romero*, 959 F.3d at 101-02 (quotation marks, ellipsis, and citation omitted). "Instead, we must engage in an objective inquiry, asking whether under the circumstances the government's litigation strategy was objectively unreasonable in light of the facts and binding case law." *Id.* at 102 (quotation marks, brackets, and citation omitted). "[I]n doing so, we must be wary to leave prosecutors the breathing space necessary to pursue justice with vigor." *Id.* "A Hyde Amendment award is not available simply because a defendant was acquitted or because the government engaged in contentious and hard-fought litigation tactics." *Id.* (quotation marks omitted).

## IV.   ANALYSIS

Beebe's claims under the Hyde Amendment fall into three general categories: (1) alleged misconduct by the government in its decision to charge Beebe, (2) alleged misconduct by the government in requesting a stay of a parallel civil proceeding involving payment submissions to an insurer by Beebe, Ryan, and others formerly associated with the Bank, and (3) various complaints of alleged misconduct by the government during trial. *See* Rec. Doc. 965-1. The Court will address each category in turn.

### a. Decision to charge Beebe

Beebe argues that the Government initiated its prosecution of him for an improper purpose: to obtain the recusal of Judge Milazzo. *Id.* at 5. However, Mr. Beebe made this same motion in his prior motion to dismiss, R. Doc. 434, and the Court rejected it, finding that "the record here does not credibly suggest any such purpose or bad faith on the part of the government." Accordingly, the Court has already rejected Beebe's argument that the Government's decision to

charge him was vexatious, frivolous, or in bad faith. Additionally, the Government is currently trying another FNBC case before Judge Milazzo in which no recusal has been sought, further undermining Beebe's position that the Government has resorted to underhanded tactics in this matter to try to secure Judge Milazzo's recusal.

 b. **Request to stay parallel civil proceeding**

Mr. Beebe argues that the Government interfered with his right to counsel "by moving to intervene in and stay, shortly before trial, litigation between Mr. Beebe and the bank's insurer, which guaranteed that the insurer would stop funding Mr. Beebe's defense at or around the time that trial commenced." R. Doc. 965-1 at 6. But Beebe has put forth no evidence or argument tending to show that the Government's attempt to stay that civil litigation was due to any vexatious or bad faith motive to interfere with the instant criminal proceedings. As Judge Africk summarized in his order granting the Government's request to stay the related civil litigation, "Beebe asserts that the de facto result of granting the government's motions to stay the civil case would be to deny him the right to the counsel of his choice, in violation of the Sixth Amendment of the Constitution. Setting aside Beebe's implicit allegations of nefarious motives on the part of the government for seeking to stay the proceedings—*for which he offers no factual evidence beyond the mere fact that the government sought a stay at all*—Beebe's claims are without merit." Id. at *8 (emphasis added). Judge Africk found that "the interests of justice require granting the government's motions to stay the civil action before the Court, pending resolution of the parallel criminal proceeding." *Id.* at *10.

Beebe cannot transform the government's successful motion to stay into evidence of vexatiousness or bad faith simply by repeating the same arguments that Judge Africk heard and

rejected, none of which support a finding that the government's position in the criminal prosecution was vexatious, frivolous, or in bad faith.

### c. Alleged misconduct during trial

First, Mr. Beebe argues that this Court's sustaining of his *Batson* challenge during jury selection evidences dishonesty, and thus per se bad faith on the part of the Government. R. Doc. 965-1 at 5. Beebe cites to no cases which could be read to establish that a sustained *Batson* challenge can be construed as evidence of per se bad faith, and, even if it could, Beebe does not explain how such a finding could be extrapolated into a finding that the Government's prosecutorial position itself was in bad faith, as required to prevail under the Hyde Amendment. The Court sustained Beebe's *Batson* challenge out of an abundance of caution, and declines to transform that holding into one that the Government's prosecution of Mr. Beebe is vexatious, frivolous, or in bad faith.

Secondly, Beebe asserts that the Government's prosecution of him was vexatious, frivolous, or in bad faith as evidenced by the "utter lack of evidence" against him. R. Doc. 965-1 at 10. But just because the jury acquitted Mr. Beebe does not mean that the Government presented no evidence against him. As the Government points out, multiple witnesses testified that information in loan documents for which Beebe was the loan officer was fraudulent. For example, at least three witnesses testified at trial that the paperwork for loans issued to Warren Treme underrated the risk rating for those loans and misstated their purpose. Beebe signed the credit memoranda for these loans as approving officer, and emails reveal that Beebe was aware that the loans were in fact to be used to cover payments to the bank on Treme's other loans. Thus, for the same reasons as this Court denied Mr. Beebe's motion for acquittal, instead sending the charges against him to the jury, the Court finds that there was more than adequate evidence

against Beebe to justify the Government's prosecution. There is no lack of evidence against Beebe by which the Court might conclude that the Government's prosecution of him was vexatious, frivolous, or in bad faith.

Thirdly, Beebe challenges the Government's use of summary chart evidence, its presentation of the testimony of Bill Roohi, and the fact that the Government listed many more exhibits and witnesses on its pretrial disclosures than it actually called, arguing that these also evidence bad faith on the part of the government. As to the summary charts, the Court approved these charts for display to the jury during testimony, and Mr. Beebe has not established that anything about them was improper, let alone that they meet the demanding standard for claims under the Hyde Amendment.

The same is true for Bill Roohi's testimony. The Government called Mr. Roohi to testify about compensation and benefits the Bank paid to employees to establish motive for the Bank officer defendants, including Beebe. Mr. Roohi explained that certain funds paid by the Bank to employees were considered compensation for tax purposes, while other benefits that did not meet that definition of compensation were nevertheless significant for attracting and retaining employees. The Government presented data about First NBC Bank stock options granted to Beebe as evidence of his motive to continue hiding Ryan's scheme and keep the Bank's stock price up, and Beebe sought to undermine this point during cross-examination by highlighting that those options do not count as taxable compensation before they have vested and been exercised. The fact that the government and Beebe elicited different testimony from Mr. Roohi in response to different questions, does not establish that the Government was misleading anyone, much less entitle Beebe to relief under the Hyde Amendment.

As to Beebe's claim that the Government's disclosures were overly voluminous compared to what they it actually introduced at trial, courts denying Hyde Amendment claims have recognized that "[t]he trial process is fluid and involves multiple strategic and evidentiary decisions, many of which cannot be predicted at the outset, and many of which depend on contested evidentiary and other trial rulings." *United States v. Schneider*, 395 F.3d 78, 87-88 (2d Cir. 2005); *see also United States v. Oz*, 2017 WL 3531521, at *10 (D. Minn. Aug. 17, 2017) ("[T]he fact that much of this evidence was not admitted at trial does not classify this prosecution as frivolous.") The Court thus declines to find this alleged over-disclosure to be per se evidence of vexatious, frivolous, or bad faith motive.

V.     **CONCLUSION**

For the foregoing reasons Beebe's Motion for Feed and Expenses Pursuant to the Hyde Amendment is hereby **DENIED**. Beebe's request in the alternate that the Court order the United States Treasury to pay his trial costs under 18 U.S.C. § 3006A(e) is similarly **DENIED** because Beebe has not been determined eligible for representation under the Court's Criminal Justice Act plan.

New Orleans, Louisiana, this 17th day of April, 2023.

                                             _____
                                                                     United States District Judge